UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

HEIDI HAAS,

    Plaintiff,       Case No. 21-cv-

-vs-

ADTEGRITY.COM, INC.,       Hon.
a foreign profit corporation,
d/b/a MEDIA PLACE PARTNERS,

    Defendant.

---

Jennifer Lossia McManus (P65976)
Ryan O. Rosenberg (P84530)
Fagan McManus, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com
rrosenberg@faganlawpc.com

---

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out of the transaction or occurrence
alleged in the Complaint.

NOW COMES Plaintiff, HEIDI HAAS, by and through her attorneys, FAGAN MCMANUS, P.C., and for her cause of action against the Defendant, states as follows:

## JURSIDCTIONAL ALLEGATIONS

1.    Plaintiff, Heidi Haas (hereinafter referred to as "Plaintiff" or "Haas"), is an individual residing in the City of Rockford, County of Kent, State of Michigan.

2.    Defendant, ADTEGRITY.COM, INC., doing business as MEDIA PLACE PARTNERS (hereinafter referred to as "Defendant") is a for-profit corporation with its

1

principal place of business in Grand Rapids, Michigan, and at all times pertinent hereto operated in Grand Rapids, Michigan.

3. At all times pertinent hereto, Plaintiff primarily worked out of Defendant's Grand Rapids, Michigan location.

4. At all times pertinent hereto, Defendant employed at least 50 employees within a 75 mile radius of Plaintiff's worksite.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §1367 (supplemental).

6. The amount in controversy is in excess of $75,000.00, exclusive of all interest, costs, attorney fees and punitive damages.

## GENERAL ALLEGATIONS

7. In September 2017, Haas began her employment with Defendant.

8. Haas last held the position of Account Executive/ Media Planner for Defendant's digital advertising business.

9. In her position, Haas purchased traditional and digital media on behalf of clients, placing orders into various sectors of the media market, and travelling to meetings with clients to better understand how to accomplish their objectives.

10. During her employment with Defendant, Haas outperformed both of her comparable colleagues, Dustin Wood and Tim Woodcox, in sales and insertion orders.

11. In 2018, Haas was responsible for launching a sales project for Defendant with Notre Dame University's Mendoza College of Business.

12. Haas negotiated and executed a two-year contract for services between Defendant and Notre Dame.

13. Thus, Haas was considered the main point of contact between Defendant and Notre Dame for the sales project.

14. Upon information and belief, Haas's work with Notre Dame generated hundreds of thousands of dollars in revenue for Defendant.

15. In June 2018, Haas was diagnosed with breast cancer.

16. Haas immediately told her supervisors, David Kettler ("Kettler") and Tracy Unger ("Unger") of her diagnosis.

17. In July 2018, Haas underwent a double mastectomy.

18. After her first surgery, Haas worked from home on the Notre Dame project for about three weeks while on an approved short-term disability leave, then returned to the office.

19. In November 2018, Haas had a follow-up surgery.

20. After her second surgery, Haas worked from home for about three weeks while on an approved short-term disability leave, then returned to the office.

21. In late-February 2019, Haas underwent a third surgery.

22. Before her third surgery, Haas's supervisors started to refer to her medical leaves as "vacations."

23. Kettler also accused Haas of being a "whiner."

24. Haas did not consider her medical leaves for surgery and recovery in relation to her breast cancer as "personal vacations."

25. In fact, during most of her medical leaves, Haas continued to work remotely on her projects.

26. After her third surgery, Haas worked from home for nearly three weeks while

on an approved short-term disability.

27.  After each of her three surgeries, Haas made it her mission to maintain the Notre Dame project's success while in recovery.

28.  After her third surgery, Haas's doctor cleared Haas to return to work with the following restrictions: (1) no lifting over 10 lbs; (2) slow movement; and (3) working from home.

29.  Defendant granted her an accommodation of working from home for one week.

30.  Then, after one week she was required, without explanation, to return to the actual office.

31.  When Haas returned to the office, she was told that she could work from home as needed.

32.  Shortly after, however, she was told, without explanation, that she would no longer have a "work from home" accommodation.

33.  Upon information and belief, Defendant allowed other non-disabled employees to continue to work from home.

34.  In early 2019, Haas and two other female employees made formal complaints to Defendant that Kettler discriminated against them based on their gender as females.

35.  As a result, Kettler was required to verbally apologize to the three female employees for his conduct.

36.  In March 2019, Kettler announced to the entire staff that Haas would not be attending a client meeting for the Notre Dame project, terminating Haas's role as the main

contact for the client.

37. Haas complained to Defendant's Chief Financial Officer, Jason Balk "(Balk"), about this change with the Notre Dame project.

38. Kettler screamed at Haas for reporting issues to Balk.

39. In May 2019, Kettler told Haas, "I wish you would be the person you were nine months ago [prior to her breast cancer diagnosis]."

40. After this comment by Kettler, Haas made a second formal complaint about Kettler's conduct to Defendant.

41. On May 22, 2019, Haas organized a meeting to review her compensation.

42. To Haas's surprise, only Balk was present at the meeting,

43. At this meeting, Haas was immediately terminated from her employment.

44. Defendant alleged that Haas's termination was due to her job performance.

45. Defendant never gave Haas any performance metrics that it expected her to achieve.

46. During her employment, Haas was not subjected to any progressive discipline, counseling, or warnings.

47. Haas was never paid her sales commissions on the projects that she renewed in 2019.

48. In June 2019, Haas filed a Charge of Discrimination with the Michigan Department of Civil Rights ("MDCR") alleging disability discrimination and failure to accommodate under the Americans With Disabilities Act of 1990, as amended ("ADA"), the Persons With Disabilities Civil Rights Act ("PWDCRA"), and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the

Elliott-Larsen Civil Rights Act ("ELCRA").

49. The Charge of Discrimination was also filed with the Equal Employment Opportunity Commission.

50. On February 2, 2021, the Equal Employment Opportunity Commission issued a Notice of Right to Sue regarding her Charge of Discrimination.

## COUNT I
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

51. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

52. Upon information and belief, Defendant is an employer within the meaning of the Family Medical Leave Act ("FMLA"), as it employs greater than 50 employees within a 75 miles radius of Plaintiff's worksite.

53. Plaintiff requested three medical leaves for treatment of her breast cancer.

54. Plaintiff was an eligible employee without the meaning of the FMLA as:

    a. Plaintiff was employed by Defendant for a time period greater than 12 months;

    b. During the previous 12 months, Plaintiff worked greater than 1250 hours.

55. Pursuant to the FMLA, Plaintiff was entitled to 12 work weeks of leave for a serious health condition in a 12 month period.

56. Defendant interfered with and/or retaliated against Plaintiff's right to take FMLA leave by:

    a. Referring to Plaintiff's leaves as "vacations" and her requests as

6

        "whining";

   b.    Requiring Plaintiff to return to work in the office instead of accommodating her work from home request;

   c.    Requiring Plaintiff to continue to work during her recovery from her serious medical condition;

   d.    Terminating Plaintiff's relationship with the Notre Dame client;

   e.    Terminating Plaintiff's employment within weeks after her return from her third surgery;

   f.    Other acts of interference and/or retaliation to be discovered.

57.    Defendant willfully violated the FMLA in that it knew that such conduct was prohibited under the statute or acted in reckless disregard of whether such conduct was prohibited.

58.    As a direct and proximate result of the FMLA violations, Plaintiff has suffered and in the future will suffer damages including, but not limited to lost wages, employee benefits, and other compensation, past and future.

59.    Pursuant to the FMLA, Plaintiff is entitled to:

   a.    All wages, salary, employee benefits, or other compensation denied or lost by reason of such violation, past and future;

   b.    Interest on the lost compensation;

   c.    Liquidated damages;

   d.    Other damages/remedies available under the law.

WHEREFORE, Plaintiff prays for Judgment against Defendant, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Plaintiff

also seeks equitable relief including back pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

60. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

61. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended.

62. Title VII prohibits, among other things, discrimination by an employer "because of sex" or "on the basis of sex," which encompasses gender discrimination.

63. As explained above, Plaintiff was regularly subjected to gender discrimination by Kettler.

64. Pursuant to Title VII it is a violation to retaliate or discriminate against an employee that has participated in a charge of gender discrimination or opposed gender discrimination.

65. As explained above, Plaintiff submitted complaints of gender discrimination to Defendant.

66. Notwithstanding the duties owed to Plaintiff pursuant to Title VII, Defendant discriminated against Plaintiff, subjected Plaintiff to a hostile work environment, and retaliated against her because of her gender and because of her opposition to gender discrimination, including, but not limited to:

    a. Discriminating against Plaintiff and other female employees based on their gender, which Plaintiff reported to Defendant;

      b.      Subjecting Plaintiff to Kettler's continued gender-based discrimination, which required Plaintiff to report his conduct a second time.

      c.      Retaliating against Plaintiff for reporting Kettler's discriminatory conduct to Defendant;

      d.      Terminating Plaintiff's employment;

      e.      Other acts of gender discrimination to be determined through discovery.

67. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

      a.      Loss of wages and earning potential;

      b.      Loss of employee benefits;

      c.      Loss of promotional opportunities;

      d.      Loss of professional esteem and consequent damage to Plaintiff's professional career;

      e.      Extreme embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage, and disappointment;

      f.      Exemplary damages;

      g.      Other damages to be determined.

68. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

## COUNT III
## VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT

69. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

70. Defendant is an employer within the meaning of the Elliot-Larsen Civil Rights Act (hereinafter referred to as the "ELCRA").

71. The ELCRA prohibits, among other things, discrimination based on gender.

72. As explained above, Plaintiff was regularly subjected to gender discrimination by Kettler.

73. Pursuant to MCL 37.2701(a) it is a violation of the ELCRA to retaliate or discriminate against an employee that has participated in a charge of gender discrimination or opposed gender discrimination.

74. As explained above, Plaintiff submitted complaints of gender discrimination to Defendant.

75. Notwithstanding the duties owed to Plaintiff pursuant to the ELCRA, Defendant discriminated against Plaintiff, subjected Plaintiff to a hostile work environment, and retaliated against her because of her gender and because of her opposition to gender discrimination, including, but not limited to:

    a. Discriminating against Plaintiff and other female employees based on their gender, which Plaintiff reported to Defendant;

    b. Subjecting Plaintiff to Kettler's continued gender-based discrimination, which required Plaintiff to report his conduct a second time.

    c. Retaliating against Plaintiff for reporting Kettler's discriminatory conduct to Defendant;

    d. Terminating Plaintiff's employment;

      e.      Other acts of gender discrimination to be determined through discovery.

76. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

      a.      Loss of wages and earning potential;

      b.      Loss of employee benefits;

      c.      Loss of promotional opportunities;

      d.      Loss of professional esteem and consequent damage to Plaintiff's professional career;

      e.      Extreme embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage, and disappointment;

      f.      Exemplary damages;

      g.      Other damages to be determined.

77. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

## COUNT IV
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

78. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

79. At all times relevant herein, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of the Americans with Disabilities Act of 1990 ("ADA").

80. At all times relevant hereto, Plaintiff had a disability, was regarded by

Defendant as having a disability, and/or had a history of a disability as defined under the ADA.

83. Defendant had a duty under the ADA, not to discharge or otherwise discriminate against Plaintiff in her employment on the basis of her disability, perceived disability, and/or history of disability.

82. Defendant also had a duty under the ADA to provide Plaintiff with reasonable accommodations necessary for her to perform her job.

83. Plaintiff's disability did not affect her ability to perform the essential functions of her job, with reasonable accommodation(s), such as working from home on an as-needed basis.

84. Defendant violated Plaintiff's rights under the ADA, as Plaintiff's disability, perceived disability, and/or history of disability was a motive or reason, that made a difference in Defendant's conduct toward Plaintiff, including, but not limited to, the following:

   a. Making derogatory comments about Plaintiff's need for medical leave and her diagnosis and/or otherwise subjecting Plaintiff to a hostile work environment;

   b. Subjecting Plaintiff to different terms and conditions of employment;

   c. Terminating Plaintiff's employment;

   d. Denying Plaintiff's request for a reasonable accommodation like working from home;

   e. Failing to engage in an interactive process regarding Plaintiff's request for accommodation;

   f. Other acts of discrimination to be determined through discovery.

85. As a result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

    a. Loss of wages and other compensation, both in the past and in the future;

    b. Loss of the value of benefits, both in the past and in the future;

    c. Loss of promotional opportunities;

    d. Loss of earning capacity;

    e. Extreme embarrassment, humiliation, emotional distress, mental anguish, disappointment, outrage and indignity;

    f. Exemplary damages;

    g. Attorney fees;

    h. Other injuries and damages that become known through the discovery process.

86. The above-referenced discriminatory conduct by Defendant towards Plaintiff was malicious and/or engaged in with reckless indifference to Plaintiff's federal protected civil rights and, as a result, Plaintiff is entitled to punitive damages.

87. Plaintiff also seeks equitable relief, including back-pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT V
## VIOLATION OF MICHIGAN'S PWDCRA

88. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

89. At all times relevant herein, Plaintiff was an "employee" and Defendant was an "employer" under the Michigan Persons with Disabilities Civil Rights Act ("PDWCRA"), MCL 37.1101 *et seq*.

90. At all times relevant hereto, Plaintiff had a disability, was regarded by Defendant as having a disability, and/or had a history of a disability as defined under the PWDCRA.

91. Defendant had a duty under the PWDCRA, not to discharge or otherwise discriminate against Plaintiff in her employment on the basis of her disability, perceived disability, and/or history of disability.

92. Defendant also had a duty under the PWDCRA to provide Plaintiff with reasonable accommodations necessary for her to perform her job.

93. Plaintiff's disability did not affect her ability to perform the essential functions of her job, with reasonable accommodation(s), such as working from home on an as-needed basis.

94. Defendant violated Plaintiff's rights under the PWDCRA, as Plaintiff's disability, perceived disability, and/or history of disability was a motive or reason, that made a difference in Defendant's conduct toward Plaintiff, including, but not limited to, the following:

    a. Making derogatory comments about Plaintiff's need for medical leave and her diagnosis and/or otherwise subjecting Plaintiff to a hostile work environment;

    b. Subjecting Plaintiff to different terms and conditions of employment;

    c. Terminating Plaintiff's employment;

    d.    Denying Plaintiff's request for a reasonable accommodation like working from home;

    e.    Failing to engage in an interactive process regarding Plaintiff's request for accommodation;

    f.    Other acts of discrimination to be determined through discovery.

95. As a result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

    a.    Loss of wages and other compensation, both in the past and in the future;

    b.    Loss of the value of benefits, both in the past and in the future;

    c.    Loss of promotional opportunities;

    d.    Loss of earning capacity;

    e.    Extreme embarrassment, humiliation, emotional distress, mental anguish, disappointment, outrage and indignity;

    f.    Exemplary damages;

    g.    Attorney fees;

    h.    Other injuries and damages that become known through the discovery process.

96. Plaintiff also seeks equitable relief, including back-pay, front-pay, or other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for Judgment against Defendants, jointly and severally, in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, court costs,

punitive damages, and attorney fees.  Plaintiff also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

                  Respectfully submitted,

                  FAGAN MCMANUS, P.C.

                  By: /s/ *Jennifer L. McManus*
                      Jennifer L. McManus  (P65976)
                      Attorney for Plaintiff
                      25892 Woodward Avenue
                      Royal Oak, MI  48067-0910
                      (248) 542-6300
Dated:  February 22, 2021          jmcmanus@faganlawpc.com

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

NOW COMES the above-named Plaintiff, by and through her attorneys, FAGAN MCMANUS, P.C., and hereby demands trial by jury on the above matter.

                  Respectfully submitted,

                  FAGAN MCMANUS, P.C.

                  By: /s/ *Jennifer L. McManus*
                      Jennifer L. McManus  (P65976)
                      Attorney for Plaintiff
                      25892 Woodward Avenue
                      Royal Oak, MI  48067-0910
                      (248) 542-6300
Dated:  February 22, 2021          jmcmanus@faganlawpc.com